## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH DURON, individually and on behalf of a class of similarly situated individuals, | ) ) ) | Case No. _____ |
| | ) | |
| *Plaintiff*, | ) ) | Hon. _____ |
| v. | ) ) | |
| LOEWS COH OPERATING COMPANY, LLC, a Delaware limited liability company, and LOEWS CHICAGO HOTEL, INC., a Delaware corporation, | ) ) ) ) ) | **JURY DEMAND** |
| *Defendants.* | | |

## CLASS ACTION COMPLAINT

Plaintiff Joseph Duron ("Plaintiff"), individually and on behalf of others similarly situated, brings this Class Action Complaint with Jury Demand against Defendants Loews COH Operating Company, LLC and Loews Chicago Hotel, Inc. ("Loews" or "Defendants"), to stop Defendants' capture, collection, use, and storage of individuals' biometric identifiers and/or biometric information in violation of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"), and the common law, and to obtain redress for persons injured by its conduct. Plaintiff alleges the following based on personal knowledge as to his own acts and experiences, and as to all other matters, upon information and belief, including an investigation conducted by his attorneys.

**INTRODUCTION**

1.     This case concerns a hotel chain capturing, collecting, using, and storing Plaintiff's and other hotel workers' biometric identifiers and/or biometric information without regard to BIPA, the common law, and the concrete privacy rights and pecuniary interests those laws protect here.

2.     Specifically, Defendants implemented, without notice to its employees or the consent of its employees, an invasive timekeeping program of capturing, collecting, storing, and using Plaintiff's and other Loews' employees' fingerprints. Defendants uses employees' fingerprints scans to identify such employees for timekeeping and payroll purposes.  In so doing, Defendants have repeatedly violated BIPA.

3.     The nature of the substantive privacy interests at issue here has been recognized by the Illinois Legislature pursuant to BIPA. Moreover, the Federal Trade Commission and numerous privacy experts have also recognized the substantive privacy interests at issue as well as the resultant injury when those interest are violated. Furthermore, expert studies show that such injuries can be quantified in dollars and cents. For those reasons and others, courts in this District and elsewhere have recognized the substantive privacy rights given to persons' in their biometric information under BIPA.

4.     Plaintiff brings this action for damages and other remedies resulting from the actions of Loews in capturing, collecting, storing, using, and disseminating his biometrics, and those of hundreds or thousands of Defendants' workers

throughout the state of Illinois, without informed written consent, and without informing them through a publicly available policy of how and when the subject biometrics would be stored or disposed of, in direct violation of the Illinois BIPA.

5.     To the extent Loews is still retaining Plaintiff's biometrics, such retention is unlawful. Plaintiff would not have provided his biometric data to Loews had he known the same would remain with Loews for an indefinite period or subject to unauthorized disclosure.

6.     On behalf of himself and the proposed Class defined below, Plaintiff seeks an injunction requiring Loews to comply with BIPA, as well as an award of statutory damages to the Class members and common law monetary damages to be determined at trial, together with costs and reasonable attorneys' fees.

## PARTIES

7.     During the relevant time period, Defendant Loews COH Operating Company, LLC has been and is a foreign limited liability company incorporated under the laws of the State of Delaware with its principle place of business in New York, New York.  Additionally, during the relevant time period, Defendant Loews COH Operating Company, LLC was registered with and authorized by the Illinois Secretary of State to transact business in Illinois, and transacting business throughout Illinois and Cook County, Illinois.

8.     During the relevant time period, Defendant Loews Chicago Hotel, Inc. has been and is a foreign limited liability company incorporated under the laws of the State of Delaware with its principle place of business in New York, New York.

Additionally, during the relevant time period, Defendant Loews Chicago Hotel, Inc. was registered with and authorized by the Illinois Secretary of State to transact business in Illinois, and transacting business throughout Illinois and Cook County, Illinois

9.     At all relevant times, Plaintiff has been a resident and citizen of the state of Illinois and worked for Defendant in Cook County, Illinois.

**JURISDICTION AND VENUE**

10.     This Court has Diversity Jurisdiction under 28 U.S.C. § 1332(d) because: (i) at least one member of the putative class is a citizen of a state different from any Defendant; (ii) the amount in controversy exceeds $5,000,000 exclusive of interest and costs; and (iii) none of the exceptions under that subsection apply to this action.

11.     This court has personal jurisdiction over Defendants because Defendants transact and/or transacted business in Illinois during the relevant time period and a substantial part of the events giving rise to Plaintiff's claims arise out of Defendants' unlawful in-state actions, as Defendants captured, collected, stored, and used Plaintiff's biometrics in this State.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, as Defendants captured, collected, stored, and used Plaintiff's biometrics at one of its facilities located in this District.

# FACTUAL BACKGROUND

## I. BIPA Was Enacted To Protect Sensitive, Immutable Personal Information.

13.     Following the 2007 bankruptcy of a company specializing in the collection and use of biometric information, which risked the sale or transfer of millions of fingerprints records to the higher bidder, the Illinois Legislature enacted BIPA to regulate the capture, collection, use, and retention of biometric information by private entities.

14.     The Illinois Legislature recognized that the sensitivity of biometric information was in a class of its own: "biometrics are unlike other unique identifiers that are used to access finances or other sensitive information.  For example, even sensitive information like Social Security numbers, when compromised, can be changed.  Biometrics, however, are biologically unique to each individual and cannot be changed, and therefore, once compromised, such individual has no recourse, is at a heightened risk for identity theft in, and is likely to withdraw from biometric facilitated transactions."  740 ILCS 14/5.  The risk is compounded when, as in the workplace context, a person's biometric information is also associated with his/her Social Security number and potentially other relevant financial information or personal identifiable information.  The gravity of the unresolvable problems created in the event of a data breach is so severe that the unlawful collection of such information constitutes actual harm.

15.　To effectuate a persons' substantive privacy interest in their unique immutable biometric information, BIPA provides that a private entity may not obtain and/or possess an individual's biometrics unless it first:

> (1)　informs the person whose biometrics are to be collected in writing that biometric identifiers or biometric information will be collected or stored;
>
> (2)　informs the person whose biometrics are to be collected in writing of the specific purpose and the length of term for which such biometric identifiers or biometric information is being collected, stored, and used;
>
> (3)　obtains a written release from the person whose biometrics are to be collected allowing the capture and collection of their biometric identifiers or biometric information; <u>and</u>
>
> (4)　publishes a publicly available retention schedule and guidelines for permanently destroying biometric identifiers and biometric information.

740 ILCS 14/15(a).

16.　BIPA recognizes that without notice and consent, persons are unaware of the nature and extent of the sensitive personal information companies collect from them and use to the companies' benefit.　BIPA acknowledges persons' substantive privacy right in biometric information and protects such right from encroachment by private companies.　Several federal courts have agreed.

17.     BIPA broadly defines the biometrics to which it applies.  Under the Act, a "biometric identifier" is any personal feature that is unique to an individual and includes fingerprints, facial scans, iris scans, palm scans, and DNA, among others. "Biometric information" is any information captured, converted, stored, or shared based on a person's biometric identifier which is used to identify an individual. 740 ILCS 14/10.

18.     The enactment of BIPA was prescient.  Today, many businesses and financial institutions have incorporated the use of biometrics into their consumer products, including such ubiquitous consumer products as checking accounts and cell phones.  Moreover, the usage of biometrics has been incorporated into the labor and employment side of commerce for security and/or timekeeping purposes, as is the case here.

19.     As the recent Equifax Data Breach and others have made clear, electronically stored information ("ESI") is notoriously difficult to protect and its dissemination can have disastrous consequences. The inherent difficulty in protecting ESI, combined with the uniquely irreplaceable nature of biometric information, means that the privacy risks associated with a person's biometrics are unparalleled. Such information is far more sensitive than a Social Security number, passport, birth certificate, or similar sensitive personal information.

## II. A Private Right Of Action Exists Pursuant To BIPA Against Any Entity That Captures, Collects, Stores, Or Uses Biometric Information Without Providing Notice And Obtaining Written Consent.

20.     Unlike other statutes that only create a right of action if there is a qualifying data breach, BIPA strictly regulates the manner in which entities may collect, store, and use biometrics and creates a private right of action for lack of compliance.

21.     At the time the BIPA was passed in 2008, another data privacy statute, the Personal Information Protection Act, 815 ILCS § 530 *et seq*. ("PIPA"), had been law in Illinois since 2006.  PIPA provides a private right of action if a company possessing an individual's unique biometric data (the same data regulated by the BIPA) suffers a data security breach and fails to give affected consumers proper notice of such a breach.  Further, numerous state and federal statutes, including the Illinois Consumer Fraud Act, also provide consumers a remedy in the event of an actual breach.

22.     Because it believed PIPA provided insufficient protection to individuals regarding their highly sensitive biometrics, the Illinois legislature passed BIPA to expand the law to cover not only data breach cases, but also to regulate the initial collection, use, storage, and dissemination of such biometrics and the publication of information relating to same.

23.     BIPA is narrowly tailored with provisions that do not place an absolute bar on the collection, capture, or dissemination of biometrics. For companies wishing to comply with BIPA, such compliance is straightforward. The necessary disclosures

and a written release can be easily achieved through a single, signed sheet of paper. BIPA's requirements simply bestow on consumers a right to privacy in their biometrics and a right to make an informed decision when electing to provide or withhold their most sensitive information and on what terms.

### III. Loews Has Failed To Comply With BIPA For Years By Subjecting Employees To A Biometric Timekeeping System Without Providing Notice Or Obtaining Consent, And By Sharing That Biometric Information With Third Parties Without Consent.

24.    Most businesses track worker's time using traditional method that do not collect or capture workers' biometric information.

25.    Such methods can be less profitable as they cannot guarantee: (a) that mistakes are not made with respect to recording employee time; or (b) that time records are not falsified.

26.    Biometric timekeeping mechanisms, on the other hand, better ensure the accuracy of employee time records because they require a person's unique, immutable biometric characteristics.  As such, biometric timekeeping mechanisms can save companies significant amounts of money.

27.    Because of the cost-savings, Loews elected to implement a biometric time-keeping program in lieu of less invasive—but also less profitable—timekeeping mechanisms.

28.    Under Loews's timekeeping method, Loews's employees are required to provide their biometric information—namely, their fingerprints—to Loews as a condition of their employment. Loews's employees must then scan their fingers to "clock-in" and "clock-out" of work every day. Accordingly, as a part of Loews's

timekeeping system, Loews captures, collects, stores, and uses its workers' fingerprints to identify them in the future for timekeeping and payroll purposes.

29.     In addition, on information and belief, Loews has disseminated Plaintiff's biometrics to payroll processors and other vendors, who store and use such information on each successive occasion it is provided by Loews and the biometric timekeeping system.

30.     A worker's fingerprint scan is a distinctive identifier and constitutes a biometric identifier and biometric information under BIPA.

31.     Prior to taking Plaintiff's biometrics, Loews did not inform Plaintiff in writing that his biometrics were being collected, stored, used, or disseminated, or publish any policy specifically about the collection, retention, use, deletion, or dissemination of biometrics.  Loews did not seek, and Plaintiff never provided, any written consent relating to the collection, use, storage, or dissemination of his biometrics.

32.     Prior to taking Plaintiff's biometrics, Loews did not make publicly available any written policy as to a biometric retention schedule and guidelines for permanently destroying the collected biometrics.

33.     Additionally, Loews did not obtain consent from Plaintiff for any dissemination of his biometrics to third parties.  Thus, Loews has violated the BIPA on each occasion it disseminates such biometrics to third parties.

34. Loews still retains its employees' biometric information. Such retention is an unlawful and continuing infringement of employees' right to privacy in their biometric identifiers and biometric information.

35. To date, Loews has never provided written notice, obtained written consent, or published the appropriate retention schedules and policies, as required by BIPA.

36. Defendants' conduct is particularly unsettling considering the economic benefit and fraud-prevention it obtains from its biometric timekeeping system, while wholly avoiding any costs associated with implementing such systems in compliance with the law. This cognizable benefit is not only to the detriment of its workers, but also to its law-abiding competitors who comply with BIPA.

37. Furthermore, Defendants' unlawful actions expose workers to serious and irreversible privacy risks—risks that BIPA was designed to avoid—including the ever-present risk of a data breach of Defendants' systems exposing its employees' biometrics to hackers and other wrongdoers worldwide.

38. The risk to workers as a result of Defendants' actions is compounded when, as here, workers' biometric information is associated with his/her Social Security number and potentially other relevant financial information. The gravity of the unresolvable problems created in the event of a biometric data breach is so severe that the unlawful collection and/or dissemination of such information constitutes actual harm.

39.     As the Illinois legislature acknowledged in enacting BIPA, persons like Plaintiff should not have to wait until their immutable personal characteristics are stolen by criminals to have a right to pursue a claim to protect their privacy interests.

**IV.     Defendants' BIPA Violations Have Caused Quantifiable Injury.**

40.     The Federal Trade Commission ("FTC") and numerous privacy experts (along with courts in this District and elsewhere) have recognized the concrete injury caused by privacy violations BIPA was designed to prevent.

41.     In particular, the FTC recently hosted a workshop to discuss privacy harms characterized as "informational injury."[1] Persons suffer informational injury when personal information about them is illegally obtained or misused, as is the case when a company violates BIPA.

42.     The FTC held the workshop because of the growing use of consumer personal information by private companies. The FTC believes that such companies' behavior requires that the FTC recognize and quantify the injury that results from the unlawful acquisition or use of personal data, particularly injury beyond the obvious financial ones (such as credit card theft) that privacy intrusions can cause. Indeed, acting FTC Chairman, Maureen Olhausen, emphasized in her opening remarks that "we need to examine more thoroughly the range of injuries that can

---

[1] FTC Informational Injury Workshop (Dec. 12,, 2017) *available at* http://www.ftc.gov/news-events/events-calendar/2017/12/informational-injury-workshop (last visited Sept. 21, 2018).

occur from privacy and data security events[,]" including "unwarranted health and safety risk and intrusion into seclusion."[2]

43.     Leading privacy experts similarly recognize injury different from direct financial injury that privacy violations can cause.

44.     For example, Michelle De Mooy. Director of the Data & Privacy Project at the Center for Democracy and Technology opined during the FTC's workshop that injury occurs when a pharmacy tracks customer purchasing behavior without notice or consent because, in the privacy context, "expectations [and consent] matter. So when you walk into a pharmacy [or any kind of store] . . . most of us . . . don't have the expectation that our phones will be pinged repeatedly by a tracking system. Also, the idea of whether or not [the customer] was asked for consent [is important]."[3]

45.     Similarly, economic and privacy professionals Sarah Butler and Garrett Glasgow, Ph.D. have explained that "[i]n the privacy setting, an individual's 'existence value' comes from the knowledge that their personal data is secure and untouched by unauthorized third parties, and damages arise when an individual discovers this is no longer true, even if there is no direct financial harm from the data sharing or data breach."[4]

---

[2] FTC Informational Injury Workshop (Opening Remarks) (Dec. 12,, 2017) *available at* https://www.ftc.gov/news-events/audio-video/video/informational-injury-opening-remarks (last visited Sept. 21, 2018).
[3] *Id.* (Panel 4 – Measuring Injury), *available at* https://www.ftc.gov/news-events/audio-video/video/informational-injury-panel-4-measuring-injury (last visited Sept. 21, 2018).
[4] Sarah Butler & Garret Glasgow, Ph.D., "Damages Based On The Intrinsic Value Of Privacy?" Law360 (July 8, 2015), *available at* http://www.nera.com/content/dam/nera/publications/2015/Damages%20Based%20On%20The%20Intrinsic%20Value%20Of%20Privacy.pdf (last visited Sept. 21, 2018).

46. Injury resulting from the unwanted collection, storage, and/or use of personal information can be quantified in dollars and cents. Butler and Glasgow have demonstrated as much through the use of "a discrete choice experiment—a specialized type of survey which asks consumers to evaluate products that are 'bundles' of attributes [including attributes related to the product provider's collection and use of personal information] and make decisions about the most preferred product based on its set of attributes."[5] The results of such discrete choice experiments demonstrate damages when certain privacy expectations have been invaded.

47. Among other ways to demonstrate damages resulting from violation of BIPA, such discrete choice experiments can be applied to an employer's capturing, collecting, storing, and/or disseminating employees' biometric information without their consent, such as is the case here.

48. Moreover, the Illinois Legislature quantified damages for BIPA violations by expressly providing for "liquidated damages" as compensation under the Act.

49. In addition to the quantifiable injury that results when privacy expectations such as those protected by BIPA are violated, unwanted invasions of privacy also result in increased risk of harm to victims. Ginger Jin, former Director of the FTC's Bureau of Economics, recently noted this reality when advocating for an

---

[5] Sarah Butler & Garrett Glasgow, Ph.D., *The Value of Personal Information to Consumers of Online Services: Evidence from a Discrete Choice Experiment* (June 19, 2014), *available at* http://www.nera.com/content/dam/nera/publications/archive2/PUB_Value_Personal_Info_0714.pdf (last visited Sept. 21, 2018).

*ex-ante* perspective on informational injury because of the limitations of measuring

such injury from an *ex-post* perspective:

> One crucial question is whether we should measure consumer harm in ex-ante or ex-post perspective. . . . The ex-post perspective is quite intuitive. Somebody misused consumer's information that results in, say, an identity theft or a fraudulent transaction. We can measure that by the amount of time, money, and effort that consumer's lost because of this.
>
> However, the ex-post perspective, I would argue, is narrowminded, because a lot of harm may not happen yet, but there's a risk there. . . .
>
> I would argue that, in fact, [placing] emphasis on ex-post harm . . . ends up encouraging overuse or misuse of data, [companies] don't need to account to the negative [externality] they are imposing on consumers. So in my view, that's inadequate.[6]

50.     Ms. De Mooy echoed Ms. Jin's thoughts, explaining that from the very

moment of collection of personal information without consent, "that is where the risk

[to the consumer] is raised. [And] that means that [the consumer's] risk for

identification, his risk for all of the other harms that come later, has been elevated.[7]

51.     Importantly, the above injury from unwanted capture, collection,

storage, and use—as well as the risk of further injury posed by such actions—is

greater when the information affected is highly sensitive, immutable personal

information such as biometrics.  For example, as Ms. De Mooy has explained, personal

health information "raises more risk in terms of harm" because it is "not information

---

[6] FTC Informational Injury Workshop (Panel 4 – Measuring Injury) (Dec. 12, 2017), *available at* https://www.ftc.gov/news-events/audio-video/video/informational-injury-panel-4-measuring-injury (last visited Sept. 21, 2018).
[7] *Id.*

we can replace easily. It's not information that can go somewhere else. It is immutable and intrinsic and inherent to us."[8]

52.    Given the prevalence of data breaches and the sensitivity of biometric information, the immediate harm of unauthorized collection is irrefutable. As explained in a recent article by the New York Times:

> Hacking of banks and identities is big business. An estimated 17.6 million Americans were subject to identity theft in 2014, mostly through breached bank accounts and credit cards. At this point, bank hackers are probably not looking for biometric data when attacking a bank. But even if it leaks as a by-product of a financial breach, criminals will find ways to abuse biometric data or resell it for further exploitation. And biometric data is more sensitive than other personal information banks store on behalf of their customers because, unlike a credit card number (or even a name!), stolen biometric data cannot be replaced: It corresponds to a patient's face or fingerprints. . . .
>
> If the compromised data happens to be biometrics, issues of identity theft may simply be unresolvable. . . . It is not enough for banks to simply avoid storing images of fingerprints, faces or irises. The biometric data that they get from processing those geometrics (what banks call "templates") can also be abused if they are accessed in combination with the algorithm used to extract the templates from the original images.[9]

53.    Even the U.S. Office of Personnel Management suffered a data breach which resulted in the theft of more than 5 million employees' fingerprints by agents of a foreign state. In response, the federal government encouraged victims to obtain

---

[8] *Id.*

[9] Yana Welinder, "Biometrics in Banking Is Not Secure," THE N.Y. TIMES, July 13, 2016, *available at* https://www.nytimes.com/roomfordebate/2016/07/05/biometrics-and-banking/biometrics-in-banking-is-not-secure (last visited Sept. 21, 2018).

biometric identity theft protection services to prevent unauthorized use of their biometrics.

54.     In short, the harm to persons whose rights under BIPA have been violated is recognized, concrete, and quantifiable.

## V.     Defendants Have Repeatedly Violated Plaintiff's BIPA Rights

55.     During the relevant time period, Plaintiff worked for Loews at a hotel in Cook County, Illinois, owned and managed by Defendants.

56.     Plaintiff was required to provide his biometrics, in the form of fingerprints, to Defendants in order to work at Defendants' facility.

57.     After Plaintiff's biometrics were initially captured and collected, Defendants required him to scan his biometrics using biometric timekeeping devices each time he needed to "clock-in" and "clock-out" of work.  Defendants' system ensures that Plaintiff could only verify his attendance and timeliness through the use of biometrics.

58.     On information and belief, Defendants then disseminated Plaintiff's biometrics to payroll processors and other vendors, who store and use such information on each successive occasion it is provided by Defendants and the biometric timekeeping system.

59.     Prior to taking Plaintiff's biometrics, Defendants did not inform Plaintiff in writing that his biometrics were being collected, stored, used, or disseminated, or publish any policy specifically about the collection, retention, use, deletion, or dissemination of biometrics.  Defendants did not seek, and Plaintiff never provided,

any written consent relating to the collection, use, storage, or dissemination of his biometrics.

60.     Prior to taking Plaintiff's biometrics, Defendants did not make publicly available any written policy as to a biometric retention schedule and guidelines for permanently destroying the collected biometrics.

61.     Additionally, Defendants did not obtain consent from Plaintiff for any dissemination of his biometrics to third parties.

62.     Based on the foregoing, Loews violated Plaintiff's BIPA rights: (a) when it originally captured and/or used Plaintiff's biometrics; (b) on each occasion it required Plaintiff to scan his fingerprint through the biometric timekeeping device; and (b) on each occasion Loews transmitted such biometrics to a third party, to the extent Loews uses third party vendors to operate its biometric program in conformance with biometric industry practice.

63.     To this day, Plaintiff is unaware of the status of his biometrics taken by Defendants. Loews has not informed Plaintiff whether it still retains his biometrics, and if it does, for how long it intends to retain such information without his consent.

64.     At the time Plaintiff's biometrics were captured, Loews did not have a publicly available policy of informing its workers, including Plaintiff, of what happens to their biometrics after they are captured, whether the information is disseminated to a third party and, if so, which third party, and what would happen to the information if an individual discontinues working for Loews, if the facility were to close, or if Loews were to be acquired, sold, or file for bankruptcy.

65. Plaintiff has suffered pecuniary damages in the form of lost wages, diminution in the unique identifying value of his biometric identifiers and/or biometric information, and other costs associated with identity protection. Plaintiff would not have agreed to work for Defendants, at least not without additional compensation, had he been informed pursuant to BIPA of the nature of Defendants' timekeeping system.

66. Furthermore, Plaintiff's biometrics are economically valuable and such value will increase as the commercialization of biometrics continues to grow. Defendants' repeated use of Plaintiff's biometrics does and will continue to confer a benefit on Defendants for which Plaintiff was not sufficiently compensated.

67. Plaintiff experiences mental anguish and injury when he thinks about the status of his biometrics and who has, or could have, access to such private information; what would happen to his biometrics if Defendants or their vendors went bankrupt or otherwise sold its assets; whether Defendants will ever delete his biometric information; what would happen if Defendants or its vendors were to experience a data breach; and how any such breach would result in irreparable harm to his identity. This harm is even more acute because an individual with access to Plaintiff's biometrics could potentially access other financial accounts or health records which may currently, or at some time in the future, be secured through his biometrics.

68.     Plaintiff and other members of the class have continuously been exposed to substantial and irreversible loss of privacy by Defendants' retention of their biometric information without their consent.

69.     By failing to comply with BIPA, Defendants have violated Plaintiff's substantive state rights to biometric information privacy as well as the common law.

## CLASS ALLEGATIONS

70.     Plaintiff brings this action on behalf of himself and similarly situated individuals pursuant to Federal Rule of Civil Procedure 23. Plaintiff seeks to represent a Class defined as follows:

> All individuals whose biometrics were captured, collected,
> obtained, stored, used, transmitted, or disseminated by or
> on behalf of Loews within the state of Illinois at any time
> within the applicable limitations period.

71.     Excluded from the Class are any members of the judiciary assigned to preside over this matter; any officer or director of Defendants; and any immediate family member of such officers or directors.

72.     Upon information and belief, there are at least hundreds of members of the Class, making the members of the Class so numerous that joinder of all members is impracticable. Although the exact number of members of the Class is currently unknown to Plaintiff, the members can be easily identified through Loews's personnel records.

73.     Plaintiff's claims are typical of the claims of the members of the Class he seeks to represent, because the factual and legal bases of Defendants' liability to Plaintiff and the other members are the same, and because Defendants' conduct has

resulted in similar injuries to Plaintiff and to the Class. As alleged herein, Plaintiff and the Class have all suffered damages as a result of Defendant's BIPA violations and common law transgressions.

74. There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members. Common questions for the Class include, but are not limited to, the following:

    a.   Whether Defendants captured, collected, stored, used, transmitted and/or disseminated the biometrics of the Class members;

    b.   Whether Defendants made available to the public a written policy that establishes a retention schedule and guidelines for destroying biometrics, as required by BIPA;

    c.   Whether Defendants obtained a written release from the Class members before capturing, collecting, or otherwise obtaining workers' biometrics, as required by BIPA;

    d.   Whether Defendants provided a written disclosure to workers that explains the specific purposes, and the length of time, for which their biometrics were being collected, stored and used before taking their biometrics, as required by BIPA;

    e.   Whether Defendants' conduct violates BIPA;

    f.   Whether Defendants' conduct is fraudulent;

g. Whether Defendants' conduct is negligent;

h. Whether Defendants' conduct regarding the biometrics falls within the scope of an express, implied, or implied-in-fact agreement;

i. Whether Defendants' conduct constitutes an invasion of privacy;

j. Whether Defendants' violations of BIPA are willful or reckless; and

k. Whether Plaintiff and the Class are entitled to damages and injunctive relief.

75. Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitively expensive and would thus have no effective remedy. The class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.

76. Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class he seeks to represent. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to those of the other members of the Class.

77. Defendants have acted and failed to act on grounds generally applicable to the Plaintiff and the other members of the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making injunctive or corresponding declaratory relief appropriate for the Class as a whole.

## COUNT I

**Violations of the Illinois Biometric Information
Privacy Act, 740 ILCS 14/1, *et seq*.,
(on behalf of Plaintiff and the Class and against Defendants)**

78. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

79. BIPA makes it unlawful for private entities to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of time for which a biometric identifier or biometric information is being captured, collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information . . . ." 740 ILCS 14/15(b).

80. Illinois' BIPA also requires that private entities in possession of biometric identifiers and/or biometric information establish and maintain a publicly available retention policy. Entities which possess biometric identifiers or information must (i) make publicly available a written policy establishing a retention schedule

and guidelines for permanent deletion of biometric information (entities may not retain biometric information longer than three years after the last interaction with the individual); and (ii) must adhere to the publicly posted retention and deletion schedule. 740 ILCS 14/15(a).

81.     Loews is a "private entity" as that term is defined under BIPA. 740 ILCS 14/10.

82.     Plaintiff and the Class had their "biometric identifiers" collected, captured, received, disseminated, or otherwise obtained and/or used by Defendants. Plaintiff and the Class' "biometric identifiers" were also utilized to identify them, and therefore constitute "biometric information" as defined by the BIPA. 740 ILCS 14/10.

83.     Each instance when Plaintiff and the Class scanned their biometrics into Defendants' devices, Defendants captured, collected, stored, disseminated and/or used such biometrics without valid consent and without complying with the BIPA.

84.     Plaintiff and the Class have been aggrieved by Defendants' failures to adhere to the following BIPA requirements, with each such failure constituting a separate and distinct violation of BIPA:

a.     Defendants failed to inform Plaintiff and the members of the Class in writing that their biometrics were being collected and stored, prior to such collection or storage, as required by 740 ILCS 14/15(b)(1);

b. Defendants failed to inform Plaintiff and Class in writing of the specific purpose for which their biometrics were being captured, collected, stored, and used, as required by 740 ILCS 14/15(b)(2);

c. Defendants failed to inform Plaintiff and the Class in writing the specific length of term their biometrics were being captured, collected, stored, and used, as required by 740 ILCS 14/15(b)(2);

d. Defendants failed to obtain a written release, as required by 740 ILCS 14/15(b)(3);

e. Defendants failed to provide a publicly available retention schedule detailing the length of time the biometrics are stored and/or guidelines for permanently destroying the biometrics it stores, as required by 740 ILCS 14/15(a); and

f. Defendants failed to obtain informed consent to disclose or disseminate the Class' biometrics, as required by 740 ILCS 14/15(d)(1).

85. By capturing, collecting, storing, using, and disseminating Plaintiff's and the Class' biometrics as described herein, Defendants denied Plaintiff and the Class their right to statutorily-required information and violated their respective rights to biometric information privacy, as set forth in the BIPA.

86. Had Defendants informed Plaintiff that he was not being provided with the required information regarding his biometrics and the biometric timekeeping

program as required by law, he would not have worked with Defendants, or he at least would have sought additional compensation.

87. Further, had Defendants provided Plaintiff with all required disclosures, he would have been able to make an informed decision on whether to accept the offered rate of pay, whether to request accommodations related to participation in the biometric program, including whether to condition his work on being provided an alternative which did not depend on the provision of his sensitive biometric information.

88. BIPA provides for statutory damages of $5,000 for each willful and/or reckless violation of the BIPA and, alternatively, damages of $1,000 for each negligent violation of the BIPA.  740 ILCS 14/20(1).

89. Defendants' violations of the BIPA, as set forth herein, were knowing and willful, or were at least in reckless disregard of the statutory requirements. Alternatively, Defendants negligently failed to comply with BIPA.

<u>COUNT II</u>
**Breach of Express Contract**
**(on behalf of Plaintiff and the Class and against Defendants)**

90. Plaintiff hereby incorporates the foregoing allegations as if fully set forth herein.

91. Plaintiff and the Class members entered into express agreements with Loews to provide hotel services on Defendants' behalf to Defendants' customers.

92. Plaintiff and the Class members agreed to work for Loews in exchange for, and with the understanding that they would receive, a legally compliant work

environment that adheres to Loews's own Rules and Regulations pertaining to employees.

93. These agreements were subject to implied covenants of good faith and fair dealing because Defendants had broad discretion in how to perform their duties and obligations. Defendants had virtually sole and exclusive discretion as to the work environment of Plaintiff and Class members.

94. Plaintiff and the Class performed all conditions, covenants, obligations, and promises owed to Defendant, including working when required and providing Loews their sensitive and confidential biometrics.

95. Loews, however, breached its agreements with Plaintiff and the Class and failed to abide by the covenant of good faith and fair dealing.

96. As a result of Defendants' breaches of contract and the covenant of good faith and fair dealing, Plaintiff and the Class members did not receive the full benefit of their bargain and therefore sustained actual damages for breach of contract.

97. Plaintiff and the Class have also suffered actual damages resulting from the dissemination and exposure of their biometrics to third parties and remain at risk of suffering additional damages in the future.

98. Plaintiff and the Class have also suffered actual damages resulting from their attempts to ameliorate the effect of the breach.

## COUNT III
### Breach of Express Contract Implied in Fact (in the alternative to Count II)
### (on behalf of Plaintiff and the Class and against Defendants)

99.     Plaintiff hereby incorporates paragraphs 1-89 as if fully set forth herein.

100.    Plaintiff and the Class members entered into agreements with Defendants to provide hotel services on behalf of Defendants to Defendants' customers.  These agreements were subject to implied covenants of good faith and fair dealing that all parties would act in good faith and with reasonable efforts to perform their contractual obligations.

101.    An express contract implied-in-fact was created at the time Defendants required Plaintiff to provide his biometrics whereby Plaintiff agreed to provide such biometrics in exchange for, and with the understanding that he would receive, a legally-compliant work environment that prevented the unauthorized collection, use, storage, and/or dissemination of his biometrics.

102.    An express contract implied-in-fact was also created at the time Defendants authorized Plaintiff and the Class to work at their facilities whereby Plaintiff and the Class agreed to work in exchange for, and with the understanding that they would receive, a legally-compliant work environment that prevented the unauthorized collection, use, storage, and/or dissemination of his biometrics.

103.    Defendants breached their implied contracts with Plaintiff and the Class by taking, storing, using, and disseminating to third parties Plaintiff's and Class members' biometric information without notice or obtaining consent.

104.     Furthermore, Defendants had sole and broad discretion in how to perform their obligation to provide a legally compliant workplace. Thus, Defendants also breached the implied duty of good faith and fair dealing by unfairly withholding information about the biometric program, information that was solely in Defendants' possession and control, despite requiring Plaintiff to participate in the same.

105.     Plaintiff and the Class performed all conditions, covenants, obligations, and promises owed to Defendants, including working when required and providing Defendants their sensitive and confidential biometrics.

106.     As a result of Defendants' breaches of contract and the covenant of good faith and fair dealing, Plaintiff and the Class members did not receive the full benefit of their bargain and sustained actual damages.

107.     Plaintiff and the Class have also suffered actual damages resulting from the dissemination and exposure of their biometrics to third parties and remain at risk of suffering additional damages in the future.

108.     Plaintiff and the Class have also suffered actual damages resulting from their attempts to ameliorate the effect of the breach.

### COUNT IV
### Unjust Enrichment (in the alternative to Counts II & III)
### (on behalf of Plaintiff and the Class and against Defendants)

109.     Plaintiffs incorporate paragraphs 1-89 above as if fully restated herein.

110.     Plaintiff brings this Count in the alternative to Counts II and III above, to the extent the finder of fact finds that there was no valid contract between Plaintiff and Defendants.

111. By requiring that Plaintiff and Class members provide their biometric identifiers and/or biometric information and participate in Defendants' biometric timekeeping system, Defendants retained a benefit in the form of cost savings, increased profit, and/or increased worker productivity (achieved through eliminating timekeeping mistakes).

112. Defendants' benefit occurred to the detriment of Plaintiff and Class members in that Plaintiff's and Class members' substantive privacy rights were violated in the process. Such privacy rights were violated in that: (a) Plaintiff's and Class members' biometric identifiers and/or biometric information were/was captured, collected, stored, used, and/or disseminated without their knowledge, notice, or written consent and without being provided a plan for the treatment of such information; and (b) Plaintiff and Class members were unjustly exposed to greater risk of injury as a result of Defendants' practices with respect to their biometrics.

113. Defendants' retention of the foregoing cost-savings and profits to the detriment of Plaintiff and Class members violates the fundamental principles of justice, equity, and good conscience.

114. Accordingly, Defendants have been unjustly enriched at Plaintiff's and the Class members' expense, in the amount of Defendants' profits and cost-savings, among other damages, in an amount to be proven at trial.

<u>**COUNT V**</u>
**Intrusion Upon Seclusion**
**(on behalf of Plaintiff and the Class and against Defendants)**

115. Plaintiff hereby incorporates paragraphs 1-89 as if fully set forth herein.

116.    Defendants have intentionally and unlawfully intruded upon Plaintiff's and the Class's biometric information and data derived therefrom.

117.    Such biometrics, as contemplated by the Illinois Legislature in its implementation of BIPA, constitute private affairs and concerns.

118.    Thus, Defendants have unlawfully intruded upon Plaintiff's and the Class's private affairs by failing to inform them of the purpose and length of term for which they intended to retain and use the biometrics, despite the fact that such disclosures are required by law.

119.    On information and belief, Defendants have also intentionally and unlawfully intruded upon Plaintiff's and the Class's private affairs and concerns by disseminating their biometrics to third parties, such as payroll vendors or timekeeping vendors, without knowledge and consent in violation of the law.

120.    Plaintiff and the Class had a reasonable expectation that any entity seeking to collect their biometrics, and certainly their employers, supervisors, and principals, would be doing so legally.

121.    A reasonable person would find Defendants' intrusions highly offensive and objectionable, and Plaintiff and the Class did find, and continue to find, Defendants' conduct to be both highly offensive and objectionable.

122.    These repeated intrusions caused damages to Plaintiff and the Class members in the form of, among other things, mental anguish and pecuniary harms.

## COUNT VI
## Conversion
### (on behalf of Plaintiff and the Class and against Defendants)

123. Plaintiff hereby incorporates paragraphs 1-89 as if fully set forth herein.

124. Plaintiff and Class members have a right to exclusive possession of their biometric information.

125. Plaintiffs and Class members have a right to absolute and immediate possession of their biometric information from Defendants in particular.

126. Nonetheless, Defendants wrongfully and without authorization assumed control, dominion, and/or ownership over Plaintiffs' biometric information by capturing, collecting, storing, and/or using it as a part of Defendants' timekeeping and payroll practices.

127. Any demand by Plaintiffs and Class members for immediate possession of their biometric information from Defendants would have been futile. In any event, Defendants have sold, disposed of, and/or fundamentally changed the biometric information at issue by capturing, collecting, storing, and/or disseminating it without Plaintiffs' and Class members' permission.

128. As a direct and proximate result of Defendants' actions, Plaintiffs and Class members have been damaged in an amount to be determined at trial.

129. Accordingly, with respect to Count VI, Plaintiff, on behalf of himself and the proposed Class, prays for an award of actual and compensatory damages in an amount to be determined at trial.

## COUNT VII
## Fraudulent Concealment
## (on behalf of Plaintiff and the Class and against Defendants)

130.  Plaintiff hereby incorporates paragraphs 1-89 as if fully set forth herein.

131.  Defendants intentionally concealed and/or omitted the nature and extent of its capture, collection, storage, and/or use of Plaintiff's and Class members' biometric information in order to induce Plaintiff and Class members to provide such biometric information to Defendants. Such concealed information was material to Plaintiff and Class members as it would be to any reasonable person in deciding whether to provide their biometric information to a third party.

132.  Defendants' concealment and/or omission was intended to induce the belief of Plaintiff and Class members that: (a) they were not providing to Defendants immutable personal information; (b) Defendants was not capturing, collecting, storing, and/or using their immutable personal information; and/or (c) that they were not exposing their immutable personal information to dissemination to third parties and/or the risk of theft.

133.  Because Defendants were Plaintiff's and Class members' employer and/or because of Defendants' statutory duties under BIPA, Defendant had a duty to disclose to Plaintiff and Class members the nature and extent of the biometrics Defendants collected, how such biometrics would be used and/or disseminated, and the risks therefrom.

134.  Plaintiff and Class members relied upon Defendants' silence as a representation that: (a) they were not providing to Defendants immutable personal

information; (b) Defendants were not capturing, collecting, storing, and/or using their immutable personal information; and/or (c) that they were not exposing their immutable personal information to dissemination to third parties and/or the risk of theft. In the alternative, Plaintiff and Class members could not have discovered such facts through reasonable inquiry or inspection or were prevented from making such a reasonable inquiry or inspection because Defendants maintained total control over information relating to its timekeeping program and its collection, capture, storage, and/or use of biometric information.

135. Had Plaintiff and Class members been aware of such material information concealed and/or omitted by Defendants, they would not have accepted or continued employment, or at least would not have accepted or continued employment without additional compensation.

136. As such, Plaintiff and Class members were damaged by their reliance on Defendants' fraudulent concealment and/or omission in an amount to be proved at trial.

## COUNT VIII
### Negligence (in the alternative to Count VII)
### (on behalf of Plaintiff and the Class and against Defendants)

137. Plaintiff hereby incorporates paragraphs 1-89 as if fully set forth herein.

138. To the extent that a finder of fact concludes that Defendants did not intentionally withhold information from Plaintiff and the Class relating to its biometric timekeeping program, Defendants were nonetheless careless and negligent in their failure to act reasonably with regards to the biometric program.

139. As more fully alleged above, special relationships existed between Plaintiff and the Class and Defendants which gave rise to various duties and obligations concerning the biometric timekeeping and biometric data at issue because Defendants had full control over such biometric program, policies, and procedures relative to Plaintiff's limited knowledge and power.

140. Indeed, Defendants' position relative to Plaintiff in terms of access to information regarding the workplace, and their conduct in handling Plaintiff's biometrics, gave rise to a duty for Defendants to act reasonably under the circumstances.

141. Defendants knew, or should have known, of the risks inherent in collecting, storing, using, and disseminating the biometrics of their workers and owed duties of reasonable care to Plaintiff and the Class whose biometrics were obtained through their workplace relationship with Defendants.

142. Defendants knew or should have known that their agents were engaging in conduct that involved handling and dealing in the sensitive biometric data of employees and in so doing explicitly undertook a duty of care with respect to such data. Nonetheless, Defendants were careless and negligent in failing to ensure they provided compliant working conditions and met the applicable standard of care for the obtaining and handling of biometric data.

143. Defendants breached its duties to Plaintiff and the Class with regards to biometric privacy by, among other things, failing to implement a BIPA-compliant biometric system with reasonable data security policies.

144. As a direct and proximate result of Defendants' conduct, Plaintiff and the Class have suffered pecuniary and non-pecuniary injury, including lost wages and diminution in the value of their biometrics caused by Defendant's exposure of such information to third-parties.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the proposed Class, respectfully requests that this Court enter an Order:

a. Certifying the Class as defined above, appointing Plaintiff as class representative and the undersigned as class counsel;

b. Declaring that Defendants' actions, as set forth herein, violate the BIPA;

c. Awarding injunctive and equitable relief as necessary to protect the interests of Plaintiff and the Class by requiring Defendants to comply with the BIPA requirements for the capture, collection, storage, use, and dissemination of biometric identifiers and biometric information and to destroy all biometric information of Plaintiff and of Class members in Defendants' possession and illegally obtained;

d. Awarding statutory damages of $5,000 for each willful and/or reckless violation of the BIPA, pursuant to 740 ILCS 14/20(1);

e. Awarding statutory damages of $1,000 for each negligent violation of the BIPA, pursuant to 740 ILCS 14/20(3);

f. Awarding monetary damages and equitable relief for Defendants' breach of contract, negligence, unjust enrichment, intrusion upon

seclusion, conversion, and fraud in an amount to be determined at trial, as well as punitive damages for Defendants' fraudulent conduct;

g. Awarding reasonable attorneys' fees, costs, and other litigation expenses pursuant to 740 ILCS 14/20(3) as well as Fed. R. Civ. P. 23;

h. Awarding pre- and post-judgment interest, as allowable by law; and

i. Awarding such further and other relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

Dated: September 24, 2018

Respectfully submitted,

JOSEPH DURON, individually and on behalf of a class of similarly situated individuals,

By: /s/ *Steven A. Hart*
*One of Plaintiff's Attorneys*

Steven A. Hart
John S. Marrese
HART MCLAUGHLIN & ELDRIDGE, LLC
22 W. Wacker Dr., Ste. 1600
Chicago, IL 60602
P. 312.955.0545
F. 312.971.9243
shart@hmelegal.com
jmarrese@hmelegal.com

*Counsel for Plaintiff and the Putative Class*